**BROWN & CONNERY, LLP**
Jennifer A. Harris, Esq.
6 North Broad Street
Woodbury, New Jersey 08096
(856) 812-8900
*Attorneys for Defendant, TD Bank, N.A.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF JOSEPH BYRNE,<br><br>                         Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>                         Defendant. | Civil Action No.:<br><br><br>**NOTICE OF REMOVAL** |

**TO:   CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

**PLEASE TAKE NOTICE** that Defendant, TD Bank, N.A. ("TD Bank"), removes this

action from the Superior Court of New Jersey, Law Division, Union County, to the United States

District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1441 and 1446, and based

upon the following:

1.      On May 7, 2024, Plaintiff filed a Complaint against TD Bank in the Superior Court

of New Jersey, Law Division, Union County, under Docket Number UNN-L-1717-24 (the "State

Court Action").  Pursuant to 28 U.S.C. § 1446(a), a true and accurate copy of Plaintiff's Complaint

is attached hereto as Exhibit A.

2.      TD Bank was served with the Complaint on or about May 14, 2024.

3.      TD Bank's Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), because this action was removed within thirty (30) days of receiving "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

4.      Venue is proper in this district, under 28 U.S.C. § 1441(a), because the Superior Court of New Jersey, Union County, is located within the District of New Jersey.

5.      The Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      For determining diversity in a matter involving a natural person, "[c]itizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" Freidrich v. Davis, 767 F.3d 374, 377 (3d Cir. 2014) (quoting McCann v. George W. Newman Irrevocable Tr., 458 F.3d 281, 286 (3d Cir. 2006)).

7.      For diversity purposes, the representative of the estate of a decedent is deemed to acquire the citizenship of the decedent at the time of the decedent's death. 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"); see also Golden v. Golden, 382 F.3d 348, 352 n.1 (3d Cir. 2004) ("In diversity actions involving estates, the courts look to the citizenship of the decedent to determine jurisdiction.").

8.      Plaintiff, Estate of Joseph Byrne, is a citizen of the State of New Jersey because Joseph Byrne, deceased, was domiciled in New Jersey. See Exhibit A, Compl. at ¶ 1.

9.      Defendant, TD Bank is a citizen of the State of Delaware because TD Bank is a national banking association with its main office in Delaware, as designated in its articles of

association. Wachovia Bank v. Schmidt, 546 U.S. 303, 313, 318 (2006) (For diversity purposes, a national bank's citizenship is "in the State designated in its articles of association as its main office."). Attached hereto as Exhibit B is an excerpt from the Office of the Comptroller of the Currency, List of Active Institutions, indicating TD Bank's Delaware main office location, and available at https://www.occ.treas.gov/institution-search/details?q=td%20bank&charter=24096&name=TD%20Bank,%20National%20Association&city=Wilmington&state=DE&info=ner

10.     Based on the relief sought and Plaintiff's allegations, TD Bank asserts in good faith that the amount in controversy exceeds $75,000.00. See Exhibit A, Compl. at ¶ 5 ("Defendant permitted a series of fraudulent transactions, approximately 400 in total, to withdraw $180,000 from Mr. Byrne's account.").

11.     Pursuant to 28 U.S.C. § 1446(d), TD Bank has provided Plaintiff with written notice of the filing of this Notice of Removal, and a copy of the Notice of Removal was filed with the Superior Court of New Jersey, Union County, Law Division.

12.     Based on the foregoing, the State Court Action is properly removed.

13.     TD Bank reserves the right to amend or supplement this Notice of Removal.

14.     TD Bank appears solely for the purpose of removal and for no other purpose, and hereby reserves all rights and defenses.

**WHEREFORE**, TD Bank, N.A. requests that the State Court Action be removed to the United States District Court for the District of New Jersey, and that this Court accepts jurisdiction and places this action on the docket for further proceedings.

Respectfully Submitted,
**BROWN & CONNERY, LLP**
*Attorneys for Defendant,*
*TD Bank, N.A.*

*/s/ Jennifer A. Harris*
Jennifer A. Harris

Dated: June 6, 2024

**HEYMANN & FLETCHER, ESQS.**
ALIX CLAPS, ESQ. - Attorney ID: 108622014
1201 Sussex Turnpike
Mt. Freedom, NJ 07970
Phone: (973) 895-4400
Fax: (973) 895-3005
Email: aclaps@hflawfirm.com
*Attorney(s) for Plaintiff*

| | |
|---|---|
| ESTATE OF JOSEPH BYRNE,<br><br>                              Plaintiff,<br><br>                    vs.<br><br>TD BANK, NA,<br><br>                              Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>UNION COUNTY<br>CIVIL PART<br><br>DOCKET NO.:<br><br>                    Civil Action<br>                    **COMPLAINT** |

Plaintiff, Estate of Joseph Byrne, complaining of Defendant, states as follows:

1.      Joseph Byrne, deceased, resided at 58 North Ave, Apartment 3, Garwood, NJ 07027.

2.      Defendant, TD Bank, NA, is a Delaware entity that is a subsidiary of a Canadian banking entity that does business with various branches throughout the country and State of New Jersey.

3.      On or about November 27, 2016, Joseph Byrne opened a TD Simple Checking Account, ending 8294, with Defendant. Into the account was deposited the proceeds from a lawsuit, approximately $500,000 in total. Mr. Byne was also apparently issued a debit card linked to that account.

4.      Mr. Byrne suffered from chronic conditions including alcoholism, depression, and diabetes. He suffered a heart attack in January 2022.

5.      While he was undergoing significant medical treatment for these conditions, including lengthy stays in hospitals and rehabilitation facilities, Defendant permitted a series of fraudulent transactions, approximately 400 in total, to withdraw $180,000 from Mr. Byrne's account.

6.      These transactions occurred between June 21, 2022 and November 1, 2022. During much of this time Mr. Byrne was in a substance abuse rehabilitation facility with limited access to the outside world.

7.      Mr. Byrne passed away on December 4, 2022. When the Executrix went to the bank to marshal the assets for the Estate, she was informed that the Account was overdrawn.

8.      The Executrix promptly filed claims related to the fraud on or about February 16, 17, and 20, 2023 as well as March 5, 2023.

9.      The response provided by Defendant asserted that the customer confirmed all transactions were valid via SMS from their phone number. That is flatly inaccurate.

10.     The first indication that TD Bank had that there was a problem with fraud on this account was when four separate fraud detection texts went without a response – one on May 21, 2022 at 2:08am, one on May 29, 2022 at 8:09am, one on June 6, 2022 at 12:34pm, and one on June 14, 2022 at 8:03am. Each of these SMS messages sought confirmation of a $179 charge at settlements24.com.

11.     Pursuant to the bank's own policies, if the SMS was not responded to within 30 minutes, the bank was to get vocal authorization that the transactions were approved. Given the lack of approval of those four transactions, TD Bank's failure to immediately block all transaction attempts by settlements24.com is egregious.

12.     Of the forty-nine transactions of $179 that occurred between June 21, 2022 and

June 27, 2022, only one was approved via SMS text, on June 27, 2022. These transactions involved amrflpay.com and settlements24.com. Notably, the approval of that single transaction came almost three hours after the request, far outside the 30 minute period allotted by TD Bank's own policies. In its denial of the claim, TD Bank asserted "our records indicate the customer confirmed all transactions were valid via SMS for their phone number on file…."

13.     None of the numerous transactions between June 30, 2022 and July 7, 2022 had either SMS or voice authorization. These also involved amrflpay.com and settlements24.com, and totaled $7,451. Almost every transaction in that group was exactly $179, with only a few for $19 and a few for $59. TD Bank's attempt to justify its denial of this claim was that other transactions since May 21, 2022 had been validated over the phone.

14.     Of the numerous transactions between July 7, 2022 and July 19, 2022, only one was approved via SMS text, on July 14, 2022. Again, the SMS approval came approximately 8 hours after the request, far outside the 30 minute period allotted by TD Bank's own policies. These also involved amrflpay.com and settlements24.com, and totaled $7,971. Almost every transaction in that group was exactly $179, with only a few for $19 and a few for $59.

15.     None of the numerous transactions between July 19, 2022 and July 25, 2022 had either SMS or voice authorization. These also involved amrflpay.com and settlements24.com, and totaled $7,990. Almost every transaction in that group was exactly $179, with only a few for $59. Again, TD Bank's attempt to justify its denial of this claim was that other transactions since May 21, 2022 had been validated over the phone. However, on July 22, 2022, an attempt at SMS authorization went unanswered, and there is no indication that there was voice authorization.

16.     Of the numerous transactions between July 25, 2022 and August 8, 2022, only one was approved via SMS text, on August 8, 2022. These also involved amrflpay.com and

settlements24.com, as well as a new, clearly suspicious entity, esettle24.com, and totaled $8,950. Every transaction in that group was exactly $179.

17. <u>None</u> of the numerous transactions between August 8, 2022 and August 17, 2022 had either SMS or voice authorization. These also involved settlements24.com and esettle24.com, and totaled $9,070. Almost every transaction in that group was exactly $179, however, a few were much higher, $699. None of the higher transactions prompted a fraud department authorization request.

18. Of the numerous transactions between August 17, 2022 and August 29, 2022, only one was approved via SMS text, on August 29, 2022. These also involved settlements24.com and totaled $8,771. Every transaction in that group was exactly $179.

19. <u>None</u> of the numerous transactions between August 29, 2022 and September 5, 2022 had either SMS or voice authorization. These also involved settlements24.com and esettle24.com, and totaled $9,312.06. Almost every transaction in that group was exactly $179, however, there was one for $699. The only valid charge during that time seems to be $21.06 charged to Amazon on September 1, 2022.

20. Of the numerous transactions between September 8, 2022 and September 16, 2022, only one was approved via SMS text, on September 14, 2022. These also involved settlements24.com, and totaled $8,771. Every transaction in that group was exactly $179.

21. <u>None</u> of the numerous transactions between September 18, 2022 and September 26, 2022 had either SMS or voice authorization. These also involved settlements24.com and esettle24.com, and totaled $9,291. Every transaction in that group was exactly $179.

22. Of the numerous transactions between September 26, 2022 and October 11, 2022, only one was approved via SMS text, on September 30, 2022. These also involved

settlements24.com and esettle24.com, and totaled $11,891. Most of the transactions in that group were exactly $179, however there were six for $699.

23.     None of the numerous transactions between October 21, 2022 and November 1, 2022 had either SMS or voice authorization. These also involved settlements24.com and esettle24.com, and totaled $18,426.66. The transactions in this batch were significantly higher than the average of $179 seen for most of the prior months. These varied from $199.99 to $699, with the majority of transactions for either $499.99 or $699.

24.     The fact that there were a series of identical transactions, limited to only a few websites, apparently originating in Cyprus, a jurisdiction known as a source of fraudulent transactions, should have resulted in TD Bank flagging and terminating these transactions nearly immediately – certainly long before it was permitted to carry on for months and before a quarter million dollars was released.

25.     This failure by TD Bank allowed the fraudsters to increase the amount of each transaction beginning in late September 2022.

26.     Indeed, TD Bank's Anti Money Laundering procedures and controls should have raised a red flag on these transactions because the funds were going to Cyprus.

27.     TD Bank has provided, in total, nine (9) SMS confirmations and (2) voice confirmations related to these hundreds of transactions. Despite the fact that each SMS confirmation is clearly related to a single, isolated charge, it considers the authorization of a single $179 payment to justify the release, in total, of nearly one thousand times that amount.

28.     TD Bank took nearly five months to review the claims filed by the Estate before ultimately rejecting them all. The Executrix made multiple good faith attempts to progress the resolution, but was lied to by TD Bank employees.

29.     TD Bank refused to provide any details regarding their investigation into these transactions, stating that a subpoena would be required for any information. They also stated that "upon further research, we were unable to locate" a transaction that took place on December 3, 2022 in which $21,886 was released to "California Purchase."

30.     As a result of TD Bank's behavior, Plaintiff has no recourse other than to bring the instant action.

## FIRST COUNT
### Negligence

31.     Plaintiff reasserts and incorporates herein by reference all facts and allegations set forth above.

32.     TD Bank owed Plaintiff a duty of care with respect to its banking services, pursuant to the Uniform Commercial Code.

33.     TD Bank negligently permitted hundreds of identical, clearly fraudulent debits against Plaintiff's account.

34.     TD Bank breached its duty of care to Plaintiff by failing to account for and preserve Plaintiff's assets.

35.     TD Bank's breach of its duty of care was the proximate cause of Plaintiff's damages.

36.     As a result of TD Bank's breach, Plaintiff has suffered damages.

## SECOND COUNT
### Violation of N.J.S.A. 12A:4-101 et seq.

37.     Plaintiff repeats and reiterates the allegations of the first count of this complaint as if set forth at length herein.

38.     TD Bank violated the provisions of New Jersey law by processing unauthorized payment requests in connection with Plaintiff's account.

39.     Specifically, TD Bank accepted payment requests that were clearly fraudulent on their face and should have been rejected or at least further scrutinized, particularly given the identical nature of the sequential charges over a period of months.

40.     TD Bank, in releasing payment without further inquiry, acted in a manner inconsistent with, and in violation of, normal banking practices and reasonable commercial standards in the banking industry operating in New Jersey.

41.     Although TD Bank knew or should have known of the facts alleged above, TD Bank nevertheless transferred, or caused or permitted to be transferred, funds to the fraudulent parties.

42.     TD Bank illegally transferred Plaintiff's funds without Plaintiff's prior knowledge, authorization or consent.

43.     TD Bank has deprived Plaintiff of its funds held at TD Bank without reason, cause or excuse.

44.     TD Bank acted in contravention of its duties under Article 4 of New Jersey's Uniform Commercial Code.

45.     As a result, TD Bank is liable for its payment of unenforceable transfers, and must refund Plaintiff the approximately $180,000 stolen by way of the fraudulent transfers.

### THIRD COUNT
**Breach of Fiduciary Duty**

46.     Plaintiff repeats and reiterates the allegations above as if set forth at length herein.

47.     By virtue of the relationship between Plaintiff and TD Bank, TD Bank owes Plaintiff a fiduciary duty.

48.     Plaintiff placed its trust and confidence in TD Bank, which was in a dominant or superior position.

49.     Moreover, following Plaintiff's discovery of the fraudulent payments, Plaintiff placed its trust and confidence in TD Bank to resolve the issues and recover the funds, or recompense Plaintiff for what it could not recover.

50.     TD Bank failed to recover funds or recompense Plaintiff in a clear breach of its fiduciary duties.

51.     TD Bank illegally transferred Plaintiff's funds without Plaintiff's prior knowledge, authorization or consent.

52.     TD Bank has deprived Plaintiff of its funds held at TD Bank without reason, cause or excuse.

53.     As a result, TD Bank is liable for its payment of unenforceable transfers, and must refund Plaintiff the approximately $180,000 stolen by way of the fraudulent transfers.

**FOURTH COUNT**
**Violation of N.J.S.A. 12A:3-101 et seq.**

54.     Plaintiff repeats and reiterates the allegations above as if set forth at length herein.

55.     TD Bank made improper payments to a person/entity not entitled to receive payment in violation of N.J.S.A. 12A:3-420.

56.     TD Bank illegally transferred Plaintiff's funds without Plaintiff's prior knowledge, authorization or consent.

57.     TD Bank has deprived Plaintiff of its funds held at TD Bank without reason, cause or excuse.

58.     As a result, TD Bank is liable for its payment of unenforceable transfers, and must refund Plaintiff the approximately $180,000 stolen by way of the fraudulent transfers.

## FIFTH COUNT
### Conversion

59.     Plaintiff repeats and reiterates the allegations above as if set forth at length herein.

60.     TD Bank unilaterally and illegally transferred Plaintiff's funds without Plaintiff's prior knowledge, authorization or consent.

61.     TD Bank has deprived Plaintiff of its funds held at TD Bank without reason, cause or excuse.

62.     As a result, TD Bank is liable for its payment of unenforceable transfers, and must refund Plaintiff the approximately $180,000 stolen by way of the fraudulent transfers.

Wherefore, Plaintiff requests judgment against Defendant for damages, together with attorney's fees, if applicable, costs of suit, and any other relief as the court may deem proper.

Heymann & Fletcher, Esqs.,
Attorney(s) for Plaintiff

Dated: May 7, 2024                           By: _____
                                                  ALIX CLAPS, ESQ.

## CERTIFICATION OF NO OTHER ACTIONS

I certify to the best of my knowledge and belief that the dispute is not the subject of any other action pending in any other court or a pending arbitration proceeding.

Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Heymann & Fletcher, Esqs.,
Attorney(s) for Plaintiffs

By: _____
ALIX CLAPS, ESQ.

Dated: May 7, 2024

## RULE 1:38-7 (c) CERTIFICATION OF COMPLIANCE

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7.

Heymann & Fletcher, Esqs.,
Attorney(s) for Plaintiffs

By: _____
ALIX CLAPS, ESQ.

Dated: May 7, 2024

## JURY DEMAND

Plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to

New Jersey Court *Rules* 1:8-2(b) and 4:35-1(a).

Heymann & Fletcher, Esqs.,
Attorney(s) for Plaintiffs

By: _____

Dated: May 7, 2024

ALIX CLAPS, ESQ.

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-001717-24

**Case Caption:** ESTATE OF JOSEPH BYR NE  VS TD BANK, NA

**Case Initiation Date:** 05/07/2024

**Attorney Name:** ALIX CLAPS

**Firm Name:** HEYMANN & FLETCHER

**Address:** 1201 SUSSEX TURNPIKE P.O. BOX 518 MOUNT FREEDOM NJ 07970

**Phone:** 9738954400

**Name of Party:** PLAINTIFF : Estate of Joseph Byrne

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** TORT-OTHER

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Estate of Joseph Byrne?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
> **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/07/2024
Dated

/s/ ALIX CLAPS
Signed



# Financial Institution Search

Search for a financial institution by name or charter number. Visit the [Active Institutions](#) list to confirm that the Office of the Comptroller of the Currency (OCC) regulates your financial institution.

For more information about this search, please visit the [Financial Institution Search](#) homepage.

| td bank | x | 🔍 |
| --- | --- | --- |

[Back to Search Results](#)

# TD Bank, National Association (24096)

## Institution Information

**Charter / License**
24096

**Institution Name**
TD Bank, National Association

**Corporate Address**
2035 Limestone Road
Wilmington, DE 19808

**Institution Type**
Bank-NationalComm

**Charter Date**
06/01/2000

**Status**
Active

**Total Assets Date**
09/30/2023

**Total Assets(000's)**
$366,251,931

**LEI (Legal Entity Identifier)**

**FRB RSSD**

03D0JEWFDFUS0SEEKG89

497404

**FDIC Certificate**
18409

**FDIC Insurance Status**
Insured

| **Related Records** | Hide ⊖ |
|---|---|

| **Institution Name:** | BANKNORTH, NATIONAL ASSOCIATION |
|---|---|
| **City:** | PORTLAND |
| **State:** | ME |
| **Charter / License:** | 24096 |
| **Status:** | Inactive |
| **Last Action:** | 05/23/2005 |
| **Action Type:** | CA |

| **Institution Name:** | Peoples Heritage Bank, N.A. |
|---|---|
| **City:** | Portland |
| **State:** | ME |
| **Charter / License:** | 24096 |
| **Status:** | Inactive |
| **Last Action:** | 07/09/2001 |

# Community Reinvestment Act (CRA)  

[Other CRA Resources](#)

**Last CRA Rating**
Outstanding

**Date**
Jul 2, 2021

**Details**
[Evaluation Document](#)

CRA Trend (Rating)

**Date:**                    7/2/2021

**Outstanding:**             ✔

**Satisfactory:**

**Needs to Improve:**

**Substantial
Noncompliance:**

---

## Enforcement Actions (EA) 

Most Recent Enforcement Actions

**Individual:**

**Type*:**                   CMP

**Amount:**                  $37,500,000.00

**Start Date:**              9/20/2013

**Start Document:**          2013-142

**Termination Date:**

**Termination Document:**

[*Enforcement Action Types](#)

This search does not include actions against Institution Affiliated Parties (IAPs). Launch EA search to find actions against individuals associated with this institution.

---

## Corporate Actions (CA) 

Corporate actions completed within the last 30 years
There is a five day delay between when an application is received and when it becomes viewable.

**Date:**              12/31/2021

**Type:**              Merger with Non-Bank - National Bank Survives

**Application Number:** 2021-LB-215a3-323355

**City:**              Wilmington

**State:**             DE

---

**Date:**              9/18/2017

**Type:**              Business Combination - Non-Affiliate Merger

**Application Number:** 2016-NE-Combination-293512

**City:**              Wilmington

**State:**             DE

---

**Date:**              9/30/2010

**Type:**              Business Combination - Affiliate Merger

**Application Number:** 2010-NE-02-0016

**City:**              WILMINGTON

**State:**             DE

## Corporate Action References

Comptroller's Licensing Manual - The Comptroller's Licensing Manual consists of a series of booklets that explain the OCC's policies and procedures on key licensing topics. The OCC recommends reading the booklet before accessing the sample documents.

Weekly Bulletins - The Weekly Bulletin is the record of receipt and actions taken by the OCC on applications and notices filed by national banks, federal savings associations, and federal branches and agencies.

## External Data Resources

## Institution Searches

- FDIC Institution Search
- National Information Center Institution Search
- FFIEC UBPR & Call Reports

Get updates

Enter your email    Subscribe